IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

BRIAN DYTKO and HOLLY DYTKO,
individually and as the
parents and next friends of
J.D. and R.D., minors,

     Plaintiffs,

v.                            Civil Action No. 5:13CV150
                                           (STAMP)

CHESAPEAKE APPALACHIA, LLC,

     Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING AS MOOT DEFENDANT'S MOTION TO COMPEL
AND DISMISS PLAINTIFFS' COMPLAINT,
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO COMPEL ARBITRATION AND
DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND
STAYING CLAIMS OF HOLLY DYTKO, J.D. AND R.D.**

I.  Background

Plaintiff, Brian Dytko, entered into an oil and gas lease
dated November 7, 2008, ("the lease") with defendant, Chesapeake
Appalachia, LLC. The lease covers a 41-acre tract of land located
in Ohio County, West Virginia. The plaintiffs filed this civil
action in the Circuit Court of Ohio County, West Virginia, based on
the negotiation and execution of such lease and based on the
defendant's operations on the land subject to the lease. In their
complaint, the plaintiffs alleged that Brian Dytko was fraudulently
induced to enter into the lease and as such, the lease should be
declared void. The plaintiffs, however, also alleged that the
lease should be declared void because the defendant breached the

agreement by incorrectly paying royalty payments to Brian Dytko. Further, the plaintiffs collectively asserted claims for private nuisance, negligence, and intentional tort based on the defendant's operations on the land subject to the lease.

The defendant removed this civil action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). At that time, the defendant filed a motion to compel arbitration and dismiss the complaint. The plaintiffs responded to this motion, but also filed an amended complaint, asserting an additional count entitled "No Valid Enforceable Agreement to Arbitrate Exists." Accordingly, due to the plaintiffs amending their complaint, this Court dismisses as moot defendant's motion to compel arbitration and dismiss.

In response to the plaintiffs filing their amended complaint, the defendant filed a motion to compel arbitration and dismiss the amended complaint. In this motion, the defendant argues: (1) the Federal Arbitration Act ("FAA") supports compelling arbitration in this instance; (2) a valid arbitration agreement exists between the parties, as it is not ambiguous or unconscionable; and (3) the non-signatory plaintiffs are equitably estopped from avoiding arbitration.

The plaintiffs filed a response in opposition to the defendant's motion arguing that: (1) the FAA policy favoring the application of arbitration agreements only applies when a valid and

enforceable arbitration agreement exists; (2) West Virginia law demonstrates that a valid arbitration agreement does not exist due to the agreement's ambiguity and unconscionability; and (3) plaintiffs Holly Dytko and the minor children, J.D. and R.D., cannot be bound by the agreement because they are not signatories to the agreement.

The defendant filed a reply addressing the plaintiffs' arguments and reiterating those made in its initial filing. Accordingly, the defendant's motion to compel arbitration and dismiss the amended complaint is fully briefed and ripe for review. For the reasons stated below, this Court grants the defendant's motion insomuch as it seeks to arbitrate and dismiss those claims of plaintiff Brian Dytko. As to the remaining claims for private nuisance, negligence and intentional tort as they pertain to plaintiffs Holly Dytko, J.D. and R.D., this Court denies defendant's motion. This Court finds, however, that such claims should be stayed pending the outcome of the arbitration of Brian Dytko's claims.

## II. Applicable Law

The Federal Arbitration Act ("FAA") applies to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . ." 9 U.S.C. § 2. When a party

3

seeks enforcement of the arbitration clause of an agreement during proceedings in a district court, a party sufficiently "invoke[s] the full spectrum of remedies under the [Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA")]." Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 710 (4th Cir. 2001).

In order to compel arbitration under the FAA, the law of the United States Court of Appeals for the Fourth Circuit provides that a moving party must "demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) failure, neglect, or refusal of the [opposing party] to arbitrate the dispute." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002) (citing Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)). Further, while federal law determines the arbitrability of issues, "[w]hether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." Id. at 501 (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

Federal policy generally takes a liberal stance in favor of enforcement of contractual arbitration clauses. See Adkins, 303 F.3d at 500. When determining whether an issue is arbitrable pursuant to a contractual provision, courts are required to

"resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" <u>Hill v. PeopleSoft USA, Inc.</u>, 412 F.3d 540, 543 (4th Cir. 2005) (quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983)).

### III. <u>Discussion</u>

A. <u>Validity of the Arbitration Clause</u>

Defendant's motion to compel arbitration is based upon the following arbitration clause contained in the lease:

> <u>ARBITRATION</u>: In the event of a disagreement between Lessor and Lessee concerning this Lease, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined by arbitration in accordance with the rules of the American Arbitration Association. All fees and costs associated with the arbitration shall be borne equally be Lessor and Lessee.

ECF No. 11 Ex. 1 *3.

The plaintiffs contest the second factor concerning whether this Court must compel arbitration under the FAA based on this clause. The plaintiffs assert that a valid written agreement between the parties to arbitrate does not exist, as any such agreement is invalid due to its ambiguity and unconscionability.[1] As stated above, "[w]hether a party agreed to arbitrate a

---

[1]This Court notes that the plaintiffs do not contest any of the remaining factors that this Court is required to find to compel arbitration, including the portion of the second factor concerning whether the arbitration clause covers the plaintiffs' claims. Accordingly, this Court finds it unnecessary to discuss such factors at length, other than to state for the record that the defendant has established such factors.

particular dispute is a question of state law governing contract formation." <u>Adkins</u>, 303 F.3d at 501. The defendant, however, asserts that based on West Virginia law, a valid agreement does exist. The defendant argues that the agreement is not ambiguous, it is not procedurally unconscionable, and it is not substantively unconscionable. Therefore, the defendant requests that this Court compel arbitration of the plaintiffs' claims.

    1.  <u>Ambiguity</u>

Under West Virginia law, contract language is considered ambiguous "when it is reasonably susceptible to more than one meaning in light of the surrounding circumstances and after applying the established rules of construction." <u>Williams v. Precision Coil, Inc.</u>, 458 S.E.2d 327, 342 n.23 (W. Va. 1995). Courts "should read [contract] provisions to avoid ambiguities and not torture the language to create them." <u>Payne v. Weston</u>, 466 S.E.2d 161, 166 (W. Va. 1995). As such, ambiguity does not result merely because the parties do not agree to the construction of the contract. <u>Lee v. Lee</u>, 721 S.E.2d 53, 56 (W. Va. 2011). Instead, the question as to whether a contract is ambiguous is a question of law to be determined by the courts. <u>Pilling v. Nationwide Mut. Fire Ins. Co.</u>, 500 S.E.2d 870, 872 (W. Va. 1997).

The plaintiffs argue that the ambiguity of the arbitration clause arises as a result of the language found in the severability clause and the limitation of forfeiture clause. The plaintiffs

argue that these two clauses, which make references to a "court of competent jurisdiction" and to a "civil action," cause confusion and ambiguity as to whether or not a lessor actually has the right to proceed with a civil action in court, rather than through arbitration. This Court disagrees.

Initially, this Court notes that the arbitration clause itself is clear and unambiguous. This fact is not contested by the plaintiffs. The clause states that "[i]n the event of a disagreement between Lessor and Lessee concerning this Lease, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined by arbitration." This directive is clear and leaves no doubt concerning the setting of such disputes or the types of disputes that must be arbitrated.

The language of the severability and limitation of forfeiture clauses does not alter this Court's finding that the lease is clear and unambiguous concerning the parties duty to arbitrate. First, as to the severability clause, its reference to a court of competent jurisdiction holding a provision of the lease "invalid, void, or unenforceable" does not render the arbitration clause's directive concerning arbitration ambiguous. As stated above, the arbitration clause makes clear that the parties' disputes concerning the lease are subject to arbitration and, therefore, must be brought in that forum. The severability clause does not

provide any rights to either party concerning the forum in which
they may bring their disputes.  As such, the mere reference to a
court of competent jurisdiction does not render the arbitration
clause's directive that disputes must be decided in arbitration
susceptible to any different meaning.  Therefore, this Court finds
that the arbitration clause is not ambiguous based on the language
of the severability clause.

This Court further finds that the language of the limitation
of forfeiture clause also does not render the arbitration clause
ambiguous.  The plaintiffs assert that because it refers to a
"civil action," such phrase causes the arbitration clause to be
ambiguous.  The entirety of the phrase in the limitation of
forfeiture clause referencing a possible civil action states "civil
action or proceeding[.]"  Therefore, it clearly references the
possibility of a proceeding rather than a civil action and never
states that a civil action would be the correct forum.  The
arbitration clause itself makes it clear what the correct forum
would be for any possible action concerning forfeiture.  Thus,
after reading all of the clauses in conjunction with one another,
this Court finds that the arbitration clause is not rendered
ambiguous based on either the limitation of forfeiture provision or
the severability provision.  See Legg v. Johnson, Simmerman &
Broughton, L.C., 576 S.E.2d 532, 537 (W. Va. 2002) ("'The meaning
of a word is to be considered in the context in which it is

employed.  The meaning of a word thus is to be ascertained from a reading of the entire contract, rather than from a consideration of that one word alone . . . .") (quoting 17A C.J.S. Contracts § 318 (1999)).

The plaintiffs argue that this case is similar to that of State ex rel. Richmond American Homes of West Virginia v. Sanders, 717 S.E.2d 909 (W. Va. 2011), and based on the court's finding in that case, the arbitration clause at issue should be deemed ambiguous and unenforceable.  In Richmond American, the arbitration section in that action also contained a mediation clause.  The mediation clause stated that the parties were required to mediate their claims prior to instituting a civil action and repeatedly referred to the parties' right to bring a civil action.  In the same section of the contract, however, the arbitration clause stated that the plaintiffs were barred from bringing a civil action.  The court found that this continued reference to a right to bring a civil action rendered the arbitration clause that followed ambiguous.  In this action, the severability and forfeiture clause is separate and distinct from the arbitration provision.  Further, neither clause at issue directs the plaintiffs that they have a right to file a civil action.  Accordingly, this Court finds that the contract at issue in Richmond American is distinguishable from the lease involved in this action, and, thus, the finding in Richmond American is not applicable to this action.

2. <u>Unconscionability</u>

The plaintiffs next assert that this Court should invalidate the arbitration clause because it is unconscionable. Under West Virginia law, finding a contract unenforceable based upon unconscionability requires findings of some level of both procedural and substantive unconscionability and is based upon a finding of a high degree of "inequities, improprieties, or unfairness" in both the procedure of the creation of the contract, and in the contents of the contract itself. <u>Brown v. Genesis Healthcare Corp.</u>, 729 S.E.2d 217, 226-27 (W. Va. 2012) (hereinafter "<u>Brown II</u>"). "[T]he particular facts involved in each case are of utmost importance since certain conduct, contracts or contractual provisions may be unconscionable in some situations but not in others." Syl. pt. 2, <u>Orlando v. Finance One of West Virginia, Inc.</u>, 369 S.E.2d 882 (W. Va. 1988). "Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party." Syl. pt. 19, <u>Brown I</u>.

a. <u>Procedural Unconscionability</u>

As to procedural unconscionability, the West Virginia Supreme Court of Appeals stated that,

> Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties,

considering all the circumstances surrounding the
transaction. These inadequacies include, but are not
limited to, the age, literacy, or lack of sophistication
of a party; hidden or unduly complex contract terms; the
adhesive nature of the contract; and the manner and
setting in which the contract was formed, including
whether each party had a reasonable opportunity to
understand the terms of the contract.

Syl. pt. 17, <u>Brown v. Genesis Healthcare Corp.</u>, 724 S.E.2d 250 (W.

Va. 2011) (hereinafter "<u>Brown I</u>")).

In support of their claim of procedural unconscionability, the

plaintiffs assert that the contract at issue is a contract of

adhesion. They state that the defendant is a sophisticated

corporate entity with an "army of lawyers" and has superior

bargaining power; whereas, Brian Dytko is inexperienced in the area

of oil and gas leases. Further, they state that Brian Dytko did

not know what arbitration meant and it was not explained to him.

The plaintiffs also assert that the landman negotiating the lease

with Brian Dytko made misrepresentations concerning the defendant's

operations by indicating that the defendant would not be operating

in the area within the five-year term contemplated by the lease.

This Court finds that such assertions in this instance fail to

establish procedural unconscionability. Initially, this Court

finds that the lease is not a contract of adhesion. "A contract of

adhesion is one drafted and imposed by a party of superior strength

that leaves the subscribing party little or no opportunity to alter

the substantive terms, and only the opportunity to adhere to the

contract or reject it." Syl. pt. 18, <u>Brown I</u>, 724 S.E.2d 250. In

this case, the lease clearly demonstrates that bargaining between the parties did occur. While the lease seems to be a standard lease used by the defendant in its operations, one of the terms of this standard lease was removed from the lease between Brian Dytko and the defendant. The clause removed was the clause providing the defendant with the option to renew the lease. In Brian Dytko's affidavit provided by the plaintiffs with their opposition to the defendant's motion to compel, Brian Dytko states that he wanted to have the choice to extend the lease at the end of the five years because the defendant's landman negotiating the lease indicated that the defendant may be doing work in the area at that time. Accordingly, it is clear that negotiations took place concerning the lease, and it was not offered on a take it or leave it basis.

Even if the lease could be said to be a contract of adhesion, however, it would not render the lease unconscionable on that basis alone. State ex re. Clites v. Clawges, 685 S.E.2d 693, 700 (W. Va. 2009). The remaining factors concerning procedural unconscionability would still need to be examined. In this instance, those factors do not weigh in favor of finding procedural unconscionability. First, while the defendant may be said to be the more sophisticated party to the oil and gas lease, Brian Dytko through his request to remove the option to extend clause evidenced his understanding of the lease terms. Further, while the parties need to be provided a reasonable opportunity to understand the

terms of the contract, there is no requirement that one party must explain the terms of the contract to the other. <u>Adkins v. Labor Ready, Inc.</u>, 185 F. Supp. 2d 628, 638 (S.D. W. Va. 2001), aff'd at 303 F.3d 496 (4th Cir. 2002) ("There is no requirement that the more sophisticated party to a contract offer the less sophisticated party an oral explanation of the terms of the contract."). Thus, while the plaintiffs imply that the defendant should have explained what arbitration was, the defendant was not under any obligation to do so.

The plaintiffs' argument that misrepresentations made to Brian Dytko rendered the contract procedurally unconscionable is also without merit. Assuming that the landman did in fact make such representations, a determination as to whether such misrepresentations rendered the contract invalid based on fraudulent inducement pertains to the entirety of the lease. A claim that the lease as a whole is invalid, rather than the arbitration clause alone, is a question for the arbitrator and not for this Court to decide. <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 446 (2006) ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."). Accordingly, this Court finds that, based on the plaintiffs' arguments, the arbitration clause itself is not procedurally unconscionable.

b. <u>Substantive Unconscionability</u>

This Court recognizes that a finding that an arbitration clause is unconscionable requires both a finding of procedural and substantive unconscionability. Although this Court has determined that the clause is not procedurally unconscionable, it will nonetheless, for purposes of thoroughness, examine whether or not the arbitration clause is substantively unconscionable. As to substantive unconscionability, the West Virginia Supreme Court of Appeals stated that,

> Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns.

Syl. pt. 19, <u>Brown I</u>, 724 S.E.2d at 262.

The plaintiffs first argue that the clause is substantively unconscionable because it lacks neutrality and structural fairness. The plaintiffs assert that it is structurally unfair because the defendant chose the arbitrator, which is the American Association of Arbitration ("AAA"). Further, they assert that it is structurally unfair because the AAA is paid on a fee-per-case basis, and therefore, they argue that it will always be beholden to the industry insider who makes the referral, which is the defendant in this case.

14

Initially, this Court notes that the Federal Arbitration Act ("FAA") provides in part that "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed[.]" 9 U.S.C. § 5. Thus, it is clear that the FAA contemplates that arbitration agreements will in fact provide for a method of appointing an arbitrator. The arbitration clause in this instance does provide such a method stating that the arbitration shall be conducted "in accordance with the rules of the American Arbitration Association." ECF No. 11 Ex. 1 *3. The rules of the AAA provide a detailed explanation concerning the appointment of an arbitrator. See ECF No. 12 *13-14.

After a review of these rules, this Court finds that the AAA rules provide sufficient protections against the appointment of a biased arbitrator. The method allows for both parties to strike the names of unacceptable arbitrators, and provides for an opportunity to rank the order of those who are acceptable. It does not provide either party with the sole right to choose the arbitrator. Instead, the parties and the AAA work in unison to choose an arbitrator that is as agreeable to both parties as possible. Further, the FAA provides additional protections against decisions made by biased arbitrators in the event such an arbitrator is chosen, in that it allows for courts to overturn

15

arbitration awards "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2).

In support of the plaintiffs' argument that the clauses are not neutral and are structurally unfair, the plaintiffs cite two cases from the West Virginia Supreme Court of Appeals. First, the plaintiffs cite State ex rel. Dunlap v. Berger, 567 S.E.2d 265 (W. Va. 2002). In footnote 12 of this opinion, the court stated that "[w]e have held that an impermissible structural unfairness in a tribunal, be it judicial or arbitral, would be presumed where the decision-maker is designated by one of the parties to a dispute and where the person making the decisions is compensated on a fee-per-case basis." Dunlap, 567 S.E.2d at n.12. Based on this footnote, the court in Toppings v. Meritech Mortgage Services, Inc., 569 S.E.2d 149 (W. Va. 2002), answered the following question in the affirmative, without any detailed explanation:

> Whether a lender's form compulsory arbitration clause or rider, which mandates that all disputes arising out of a consumer transaction be submitted to a lender-designated decision maker compensated through a case-volume fee system whereby the decision maker's income as an arbitrator is dependent on continued referrals from the creditor, so impinges on neutrality and fundamental fairness that it is unconscionable and unenforceable under West Virginia law.

569 S.E.2d at 149. While these decisions seem to require a finding that the choice of the AAA rules renders the clause in this matter structurally unfair due to the arbitrator being compensated on a fee-per-case basis, this Court declines to make such finding.

16

Section 2 of the FAA, provides that arbitration agreements shall be valid under federal law, "save upon such grounds as exist at law or in equity for the revocation of <u>any</u> contract." 9 U.S.C. § 2 (emphasis added). As to whether state contract law or the federal law concerning the FAA applies in certain circumstances, the Supreme Court in <u>Perry v. Thomas</u>, 482 U.S. 483 (1987), stated that, "state law, whether of legislative or judicial origin, is applicable <u>if</u> that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." 482 U.S. at n.9 (emphasis in original). Whereas, "[a] state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue" is not applicable because it does not comply with § 2. <u>Id.</u> The rule provided in <u>Dunlap</u> concerning the substantive unconscionability of arbitration when the arbitrator designated is paid on a fee-per-case basis is not one that governs issues concerning the validity, revocability, and enforceability of contracts generally; instead, such rule was fashioned to specifically deal with arbitration provisions. Therefore, based on this alone, such state law rule promulgated in <u>Dunlap</u> is inapplicable as to whether the arbitration clause in the lease is valid pursuant to the FAA, as it was developed precisely from the fact that a contract to arbitrate was at issue. Accordingly, this Court must rely on federal law regarding whether

the designation of an arbitrator on a fee-per-case basis renders an arbitration clause substantively unconscionable.

The district court for the Southern District of West Virginia was faced with a similar argument concerning the fees provided to the appointed arbitrators in <u>Miller v. Equifirst Corp. of WV</u>, No. 2:00-0335, 2006 WL 2571634 (Sept. 5, 2006 S.D. W. Va.). The court in <u>Miller</u> found that "Plaintiffs' speculative arguments in this case that the [arbitration association] is biased and its rules will not result in the appointment of an unbiased arbitrator represent little more than 'general antipathy to arbitration' which both the United States Supreme Court and the Fourth Circuit have rejected." 2006 WL 2571634 at *14 (citing and quoting <u>American General Life and Acc. Ins. Co. v. Wood</u>, 429 F.3d 83, 90 (4th Cir. 2005)). The Supreme Court has expressly rejected parties' speculative arguments that "parties and [an] arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators." <u>Gilmer v. Interstate/ Johnson Lane Corp.</u>, 500 U.S. 20, 30 (1991) (quoting <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 634 (1985)). While the fee-per-case method causes plaintiffs some concern, the plaintiffs have not provided this Court with any evidence that the process results in an arbitration proceeding that lacks neutrality such that it would render the arbitration clause unconscionable. Accordingly, without evidence the arguments are

merely speculative and, thus, this Court must reject such arguments.

The plaintiffs next assert that the arbitration fees render the clause substantively unconscionable. The arbitration clause states in part that "[a]ll fees and costs associated with the arbitration shall be borne equally by Lessor and Lessee." ECF No. 11 Ex. 1 *3. The plaintiffs assert that based on the defendant's estimation of the amount in controversy, the fees would total $8,700.00, which the plaintiffs assert does not include the cost of the arbitrator's compensation, travel, and lodging, which also must be shared between the parties. The plaintiffs assert that such a cost is unreasonably burdensome compared to filing a civil lawsuit, which cost the plaintiffs $210.00.

In regards to fee-splitting provisions in arbitration agreements, the Fourth Circuit has stated that the inquiry should be focused on "whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation." Bradford v. Rockwell Semiconductor Systems, Inc., 238 F.3d 549, 556 (4th Cir. 2001). The court in Bradford stated that such an inquiry must be made on "a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." Id.

This Court has not been presented with any evidence concerning the plaintiffs' ability or inability to pay the fees that may be assessed in arbitration. The plaintiffs do not contest that Brian Dytko was paid $41,000.00 to execute the lease in question or that he further accepted an additional $39,000.00 from the defendant for surface disturbances. The plaintiffs also do not compare the actual costs of litigation beyond the filing fee, with those of arbitration to allow for a proper comparison of the cost differential between the two forums. Accordingly, the plaintiffs' speculation as to the costs of arbitration, without more, provides insufficient support for a finding of substantive unconscionability. Thus, this Court finds that the arbitration clause is valid and enforceable as it is neither ambiguous or unconscionable based on the plaintiffs' arguments. Accordingly, this Court must grant the defendant's motion to compel arbitration, at least as to plaintiff Brian Dytko, who is the signatory to the lease containing the arbitration clause, as the defendant has established the factors required to compel arbitration as to all claims pertaining to Brian Dytko.

B.    Non-Signatories to the Lease

The plaintiffs argue that even if Brian Dytko's claims against the defendant are subject to arbitration, the remaining plaintiffs, Holly Dytko, R.D., and J.D., were not signatories to the lease with the defendant. Accordingly, the plaintiffs assert that the non-

signatories cannot be subject to the arbitration clause, which is part of a lease that they did not sign. In response, the defendant states that the non-signatory plaintiffs are equitably estopped from avoiding the arbitration clause. The defendant states, however, that if this Court were to find that equitable estoppel does not apply, this Court should stay the claims of the non-signatory plaintiffs pending the outcome of the arbitration between Brian Dytko and the defendant.

Initially, this Court notes that there seems to be confusion between the parties as whether this Court must apply state law or federal law in deciding this issue. The Fourth Circuit has concluded that because the issue of whether a non-signatory may be bound by an arbitration clause "presents no state law question of contract formation or validity," the federal substantive law of arbitrability applies to resolve such question. Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, n.4 (4th Cir. 2000). Federal courts have recognized five theories for binding non-signatories to arbitration agreements: "1) incorporation by references; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel." See id. at 417 (quoting Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)).

The defendant argues that the equitable estoppel doctrine applies in this case, so as to require the non-signatory plaintiffs to be bound by the arbitration clause. "In the arbitration

21

context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." Id. at 418. To allow otherwise would "disregard equity and contravene the purposes underlying enactment of the Arbitration Act." Id. (quoting Avila Group, Inc. v. Norma J. of California, 426 F. Supp. 537, 542 (S.D. N.Y. 1977)).

The benefit sought by the non-signatory pursuant to the contract must be a direct benefit from the contract. Id. A direct benefit is one flowing directly from the contract, in contrast to one that flows as a result of the contract formation. MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 61 (2d Cir. 2001) ("The benefits must be direct -- which is to say, flowing directly from the agreement."). To determine whether the non-signatories are seeking to directly benefit from the contract, a court must examine whether the non-signatories claims "either literally or obliquely, assert a breach of a duty created by the contract containing the arbitration clause." American Bankers Ins. Group, Inc. v. Long, 453 F.3d 623, 629 (4th Cir. 2006).

In this instance, the non-signatory plaintiffs are bringing claims pursuant to West Virginia law for nuisance, negligence, and intentional tort based on the defendant's operations on the land

subject to the lease. The non-signatory plaintiffs are asserting that the defendant's actions have caused substantial and unreasonable interference with their use and enjoyment of their land and the actions have further caused a significant amount of air and noise pollution. These claims do not assert that the defendant is breaching any duty it had pursuant to the lease agreement between Brian Dytko and the defendant. While the question may arise of whether the defendant had a right to take such actions and create such pollution pursuant to the lease agreement, the non-signatory plaintiffs are not trying to directly benefit from the lease agreement in any way. Accordingly, this Court finds that the non-signatory plaintiffs are not equitably estopped from asserting their claims outside of arbitration.

The defendant requests that this action be stayed if this Court finds that the non-signatory plaintiffs are not equitably estopped from asserting their claims outside of arbitration. The Fourth Circuit has stated that "[t]he FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" Adkins, 300 F.2d at 500 (quoting 9 U.S.C. § 3). As stated above, all claims pertaining to plaintiff Brian Dytko are subject to arbitration. These claims include those in which the non-signatory plaintiffs are parties to. Accordingly, because these claims are to be submitted to arbitration as to Brian Dytko,

this Court finds that it must stay any litigation as to such claims insomuch as they concern the non-signatory plaintiffs pending the outcome of the arbitration proceedings.

## IV. <u>Conclusion</u>

For the reasons stated above, this Court DENIES AS MOOT defendant's motion to compel arbitration and dismiss plaintiffs' complaint. This Court GRANTS IN PART the defendant's motion to compel arbitration and dismiss plaintiffs' first amended complaint insomuch as it seeks to arbitrate and dismiss those claims of plaintiff Brian Dytko. This civil action is DISMISSED insomuch as it concerns plaintiff Brian Dytko and is to be brought in arbitration in accordance with this memorandum opinion and order. The Clerk is DIRECTED to dismiss this civil action and strike it from the active docket of this Court insomuch as it concerns plaintiff Brian Dytko. As to the remaining claims in the amended complaint for private nuisance, negligence and intentional tort as they pertain to plaintiffs Holly Dytko, J.D. and R.D., this Court DENIES IN PART defendant's motion to compel arbitration and dismiss plaintiffs' first amended complaint. This Court, however, STAYS such claims pending the outcome of the arbitration. The remaining plaintiffs are DIRECTED to notify this Court upon the conclusion of the arbitration proceedings.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    May 30, 2014

                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE